# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark III |
| v. | : | Mag. No. 20-12468 |
| AZHAR RANA | : | **CRIMINAL COMPLAINT** |

I, Special Agent Dustin Doyle, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

```
Special Agent Dustin Doyle
Federal Bureau of Investigation
```

Special Agent Dustin Doyle attested to this Complaint by telephone pursuant to Federal Rule of Criminal Procedure 4.1(b)(2)(A) on December 14, 2020 in New Jersey.

HONORABLE JAMES B. CLARK III
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## ATTACHMENT A

### Count One
### (Bank Fraud)

In or around April 2020, in Sussex County, in the District of New Jersey and elsewhere, defendant

## AZHAR RANA

did knowingly and intentionally execute and attempt to execute a scheme and artifice to obtain moneys, funds, and credits owned by and under the custody and control of financial institutions, to wit: Lender 1, the deposits of which are insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, and promises:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 2020 | The submission of an application on behalf of Azhar Sarwar Rana LLC to Lender 1 for approximately $5,677,473 in PPP funds. |

In violation of Title 18, United States Code, Section 1344(2) and Section 2.

## Count Two
### (Money Laundering)

On or about May 7, 2020, in Sussex County, in the District of New Jersey and elsewhere, defendant

AZHAR RANA

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a greater value than $10,000, that is, the transfer of approximately $1 million of U.S. currency from an account at Lender 1 to Bank 3 8184 Account, such property having been derived from a specified unlawful activity, that is, bank fraud, in violation of Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1957 and Section 2.

## ATTACHMENT B

I, Dustin Doyle, am a Special Agent with the Federal Bureau of Investigation. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### Overview

1. Defendant RANA used a variety of false statements to fraudulently obtain over $5 million in federal COVID-19 emergency relief funds meant for distressed small businesses. RANA submitted, or caused to be submitted, an application to a bank that falsified payroll and tax information. He then laundered the loan proceeds through a number of accounts he controlled, ultimately using the stolen funds to invest in the stock market, send money abroad to Pakistan, and make payment to a luxury car dealership, among other things.

### Background

#### *The Paycheck Protection Program*

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

3. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses

applying for a PPP loan must provide documentation showing their payroll expenses.

4. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

5. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

### *Relevant Entities and Individuals*

6. At various times relevant to this complaint:

a. Defendant Azhar Sarwar Rana ("RANA") was a resident of Newton, New Jersey. From in or around May 2017 through in or around June 2020, RANA worked at Bank 1, including as an internal audit specialist.

b. RANA was associated with a corporate entity called Azhar Sarwar Rana LLC ("Rana LLC") that listed the same address as RANA's residence in Newton, New Jersey (the "Newton Address"). Rana LLC was formed in the State of New Jersey on or about July 10, 2019. The certificate of formation for Rana LLC listed RANA as the registered agent and one of two members (the other believed to be RANA's family member), and stated that the business purpose of Rana LLC was "to buy, sell and invest in real estate properties for profit."

c. Lender 1 was a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC") headquartered in Charlotte, North Carolina.

d. Bank 2 was a financial institution headquartered in Omaha, Nebraska.

e. Bank 3 was a financial institution headquartered in San Francisco, California.

f. Bank 4 was a financial institution headquartered in New York, New York.

## The Scheme to Defraud

### *False PPP Application to Lender 1*

7. In or around early April 2020, a PPP loan application was submitted to Lender 1 on behalf of Rana LLC (the "Application"). The Application listed Rana LLC's average monthly payroll as $722,352 and the number of employees as 11. As part of the Application, RANA electronically signed an addendum that listed a different number for Rana LLC's average monthly payroll—$1,390,167.28—and requested a $10,000,000 PPP loan.

8. The Application also included, among other things:

    a. A payroll report for the first quarter of 2020 that listed Rana LLC's business address as the Newton Address and an approximate payroll expense for the three months of $3,430,872.

    b. An employer's quarterly federal tax return form 941 (the "Form 941") for the fourth quarter of 2019 that listed 76 employees earning compensation in 2019, $925,061.57 in wages paid, and $117,769.428 in taxable social security wages. The Form 941 also listed Rana LLC's address as the Newton Address.

9. The Application contained false statements. According to Social Security Administration ("SSA") records, Rana LLC did not process any SSA wages in 2018 or 2019, indicating that the Form 941 entry regarding taxable social security wages was false. Additionally, the Application was internally inconsistent as to the amount of payroll expense and employees, indicating that those entries were false as well.

10. According to New Jersey Department of Labor ("NJDOL") records, since 2019, Rana LLC paid wages in New Jersey only to approximately ten purported employees (including RANA and a family member), which occurred only during in or around June 2020, and only in the amount of approximately $30,000 collectively.

11. According to SSA records, the social security numbers and corresponding names for approximately eight of the purported employees submitted by Rana LLC to NJDOL (other than RANA and a family member) did not match—the social security numbers either belonged to other individuals or were fake. Those eight names submitted to NJDOL as purported employees of Rana LLC were the names of employees at Bank 1, where RANA previously worked.

12. Based on the Application, on or about May 6, 2020, RANA executed a promissory note with Lender 1 and Rana LLC received the $5,677,473 PPP loan in an account at Lender 1 in the name of Rana LLC and controlled by RANA.

### *Use of the PPP Loan Proceeds*

13. Bank records showed that RANA quickly transferred the PPP loan money to a number of accounts he controlled. RANA transferred approximately $4 million to an account in RANA's name at Bank 3 ending in number 8184 ("Bank 3 8184 Account"), including an approximately $1 million transfer on or about May 7, 2020. From there, RANA eventually sent a large portion of the proceeds to a brokerage account in RANA's name at Bank 2 (the "Bank 2 Brokerage Account"). RANA used the PPP funds in the Bank 2 Brokerage Account to trade millions of dollars in securities.

14. RANA opened the Brokerage Account in or around April 2017, presenting his permanent resident card, social security card, and New Jersey driver's license as identification.

15. On or about May 8, 2020, the day after RANA transferred approximately $1 million in PPP to the Bank 3 8184 Account, surveillance photographs showed him depositing a tax refund check in his name in that same account.

16. RANA ultimately transferred approximately $450,000 from the PPP loan proceeds to an account in Pakistan.

17. RANA also transferred approximately $200,000 from the PPP loan proceeds to an account in his name at Bank 4 ending in 2339 (the "Bank 4 2339 Account") in two transactions on or about May 21, 2020 and May 22, 2020. Prior to the transfers, the account had a balance of approximately $3,000. RANA previously opened the Bank 4 2339 Account on or about May 15, 2020. On or about May 28, 2020, RANA used approximately $13,000 of the PPP loan proceeds from the Bank 4 2339 Account to make a payment to a BMW car dealership in Roxbury, New Jersey.

### Arrest

18. On or about December 12, 2020, after RANA booked a flight to Pakistan departing that same day, federal law enforcement arrested RANA for his conduct in this scheme. Law enforcement encountered RANA outside the Newton Address, and he later spontaneously stated, in sum and substance, that he thought he would be confronted by law enforcement at the airport.